# Supreme Court of Texas

### No. 22-1145

Dianne Hensley,

*Petitioner*,

v.

State Commission on Judicial Conduct et al.,

*Respondents*

## On Petition for Review from the
## Court of Appeals for the Third District of Texas

JUSTICE LEHRMANN, dissenting.

After an investigation and a hearing, the State Commission on Judicial Conduct issued a public warning to a justice of the peace upon finding that she violated Canon 4A(1) of the Code of Judicial Conduct. Although the judge disagreed with the Commission's findings, she did not request judicial review of the decision as the Government Code provides. Instead, she sued the Commission and its members for violating the Texas Religious Freedom Restoration Act (TRFRA) in issuing the warning, seeking monetary, declaratory, and injunctive relief. The district court dismissed the claims on jurisdictional grounds, in part because the judge failed to exercise her statutory right to appeal

the Commission's warning and instead collaterally attacked the decision in district court. This Court holds that the judge was not required to exhaust her administrative remedies because it could not have mooted her claims in this suit. In my view, the Court glosses over the purposes of the exhaustion requirement and erroneously minimizes the impact that a decision of the Special Court of Review (SCR)—the entity that would have reviewed the Commission's sanction had the judge appealed it—could have had on the claims being pursued here. A faithful application of our precedent leads to the conclusion that exhaustion of administrative remedies was a jurisdictional prerequisite to this suit. Accordingly, and expressing no opinion on the merits of the claims, I respectfully dissent.

A state agency has exclusive jurisdiction when the Legislature grants it sole authority to make an "initial determination" in "disputes that arise within the agency's regulatory arena." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016); *see also In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004); *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). If an agency has exclusive jurisdiction, a party involved in such a dispute "must pursue and exhaust all available administrative remedies before turning to the courts." *CPS Energy v. Elec. Reliability Council of Tex.*, 671 S.W.3d 605, 618 (Tex. 2023). Generally, "administrative bodies are entitled to and should exercise the duties and functions conferred by statute without interference from the courts." *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978).

2

This exhaustion requirement applies not only to administrative procedures before a state agency, but also to appeals and other efforts to obtain review of the agency's decisions and actions. When a statute provides procedures for obtaining judicial review of an administrative agency's decisions, parties who wish to appeal those decisions generally "must do so in compliance with" the statutory procedures. *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986), *overruled on other grounds by Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000). And this Court has long considered such statutory procedures, which are intended to provide an "effective method" for a "speedy disposition" of any challenge to the agency's decisions, to be "exclusive." *Alamo Express, Inc. v. Union City Transfer*, 309 S.W.2d 815, 827 (Tex. 1958); *Lone Star Gas Co. v. State*, 153 S.W.2d 681, 699 (Tex. 1941). A challenge asserted outside of that exclusive method is considered an impermissible "collateral attack" on the agency's decision, over which courts lack jurisdiction. *Grounds*, 707 S.W.2d at 890; *Magnolia Petroleum Co. v. R.R. Comm'n*, 96 S.W.2d 273, 275 (Tex. 1936).

In the arena of sanctioning judges for violations of the Code of Judicial Conduct, Chapter 33 of the Civil Practice and Remedies Code and Article V, Section 1-a of the Texas Constitution establish the very type of pervasive regulatory scheme that grants an agency exclusive jurisdiction and requires exhaustion of administrative remedies. As the Court describes, those provisions expressly create the Commission, define its powers, require and govern its administrative review of complaints and concerns regarding judges' conduct, encourage compliance through an informal process, impose deadlines to promote

3

efficiency within that process, authorize de novo judicial review of the Commission's decisions, and impose deadlines and specific procedures for that review. *See ante* at 14–16. The provisions thereby "establish[] a comprehensive administrative review system" and "strongly indicate a requirement of mandatory exhaustion of administrative remedies," including the prescribed appeal process. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485, 487 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010).

The judge argues that this suit is not a collateral attack on the Commission's warning for two reasons. First, she asserts that she is not seeking "in any way" to disturb the warning, which "will remain on the books no matter what happens in this lawsuit." The Court agrees with this characterization; I cannot. As discussed below, the judge is no doubt seeking in this suit to "disturb" the Commission's unappealed warning.

A person may raise a government agency's violation of TRFRA as a defense in an administrative proceeding. TEX. CIV. PRAC. & REM. CODE § 110.004. The judge did just that, asserting at the hearing before the Commission that TRFRA prohibited the Commission from sanctioning her conduct. Had the judge sought judicial review of the warning, she likewise could have asserted a TRFRA violation as a defense in a de novo proceeding before the SCR. In this suit, she makes the same complaint about the warning that she could have made before the SCR: it substantially burdens her free exercise of religion in violation of TRFRA.

It is technically true that reversal of the warning is not among the requests for relief in the judge's pleadings, and the Court notes that such a request *would* constitute a collateral attack barred by the failure

4

to appeal the warning. *Ante* at 17 n.63. But the Court distinguishes the judge's requests for declarations that (1) a judge engaging in the *same conduct* underlying the unappealed warning would not violate Canon 4A and (2) sanctioning such conduct violates TRFRA and the Constitution, holding that those claims may proceed. The Court's conclusions rest on a distinction without a difference. The entire basis of the claims in this suit is that the Commission misapplied Canon 4A and violated TRFRA by sanctioning the judge for her policy—motivated by sincerely held religious beliefs—of conducting wedding ceremonies only for opposite-sex couples and referring same-sex couples to other officiants. If she were to prevail and obtain a declaration to that effect, plus an injunction prohibiting the Commission from issuing future sanctions against her for engaging in that practice, the warning would be "on the books" only in the most nominal sense. In both form and substance, this suit "is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Thus, it is a collateral attack.

Second, the judge argues that exhaustion was not required because the SCR could not have awarded her the relief she seeks in this suit under TRFRA and the Uniform Declaratory Judgments Act: compensatory damages, declaratory relief, and an injunction against further sanctions for engaging in the same conduct. Our precedent holds otherwise.

The purpose of requiring a party to exhaust administrative remedies "is never to deprive a party of legal rights; rather, it aims to

5

ensure an orderly procedure to enforce those rights." *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). This Court has thus consistently held that a party's inability to obtain all the relief sought through the administrative process is no grounds for bypassing that process where exhaustion could result in a favorable ruling that would moot the party's other claims.[1] *See, e.g.*, *City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012) (holding that "a litigant must avail itself of statutory remedies that may moot its takings claim, rather than directly institute a separate proceeding asserting such a claim" (citing *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 237 (Tex. 2011))).

We recently applied this principle in *Garcia v. City of Willis*, 593 S.W.3d 201 (Tex. 2019). There, Garcia alleged that the City's red-light-camera scheme was unconstitutional and the resulting fines levied on him were therefore unconstitutional takings. *Id.* at 205. But he had not contested the fines via the administrative adjudicative process established in the Transportation Code. *See id.* at 210. Garcia argued that exhaustion was not required because the administrative process could not provide the relief he sought for his constitutional claims, but we rejected that argument, noting that it did not "consider that the administrative process might have granted him relief on

---

[1] We have also recognized an exception to the exhaustion requirement "when the claimant cannot obtain an adequate remedy through the administrative process and requiring the claimant to go through the process would cause the claimant irreparable harm." *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 141 (Tex. 2018) (citing *Hous. Fed'n of Tchrs., Loc. 2415 v. Hous. Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987)). The judge does not argue that seeking judicial review in the SCR before filing this suit would have caused her irreparable harm.

non-constitutional grounds, thus mooting those claims." *Id.* We explained that "[t]he question here is not whether an administrative hearing could have resolved all his claims, constitutional or otherwise. Rather, the correct inquiry is whether the hearing officer had the authority to render Garcia's claims moot." *Id.* at 211. Thus, even though the administrative body lacked the ability to resolve Garcia's constitutional claim, he was nevertheless required to exhaust the process because of "the potential to moot that claim." *Id.* at 211–12; *see Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) ("If a case becomes moot, the parties lose standing to maintain their claims.").

Similarly, we held in *CPS Energy* that the Public Utility Commission's inability to address a party's constitutional claims was no justification for avoiding its administrative process. 671 S.W.3d at 620. Citing *Garcia*, we explained that the process could moot the constitutional claims. *Id.* And if it ultimately did not, "a party is not precluded from pursuing its constitutional claims after exhaustion or from seeking judicial review of any [administrative] rulings on issues underlying those claims." *Id.* (citing *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 141–42 (Tex. 2018)).

Here, the judge could have requested appointment of an SCR to conduct a de novo review of the Commission's "charging document," comprising the "sanction issued as well as any additional charges to be considered." TEX. GOV'T CODE § 33.034(d). And as noted, she could have raised TRFRA as a defense before the SCR, just as she did at the Commission hearing. *See* TEX. CIV. PRAC. & REM. CODE § 110.004. Had the SCR agreed with the judge that her conduct did not violate

7

Canon 4A or that the Commission's sanction violated TRFRA, the SCR could have dismissed the charging document, thereby vacating the public warning. P. RULES FOR STATE COMM'N ON JUD. CONDUCT R. 9(d). While this would not have mooted every aspect of the current claims, as discussed below, it would have mooted some of the requested relief and mitigated the damages she now seeks.

First, the judge seeks injunctive relief prohibiting the Commission from issuing future sanctions should she resume the sanctioned conduct. TEX. CIV. PRAC. & REM. CODE § 110.005(a)(2) (authorizing a person who successfully asserts a TRFRA claim to recover "injunctive relief to prevent the threatened violation or continued violation"). The Court concludes that the SCR's vacatur of the warning would not have mooted this claim. *Ante* at 19. According to the Court, even if the SCR concluded that the sanction could not stand, either because the judge did not violate Canon 4A or because TRFRA served as a defense, the "amplified" threat that the Commission could impose future sanctions against her for engaging in the same conduct would remain. *Id.* Again, I disagree.

Had the warning been vacated, the judge's standing to seek *prospective* relief against the Commission would be based solely on "a perceived threat of injury." *In re Abbott*, 601 S.W.3d 802, 812 (Tex. 2020); *see also USAA Cas. Ins. Co. v. Letot*, ___ S.W.3d ___, 2024 WL 2490521, at *3–6 (Tex. May 24, 2024) (concluding that the plaintiff had standing to seek damages but not injunctive relief). To establish such standing, the "threatened injury must be certainly impending"; "mere '[a]llegations of possible future injury' are not sufficient." *Abbott*, 601

8

S.W.3d at 812 (alteration in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Here, the judge would need to show "a credible threat" of being sanctioned for resuming her policy of recusing herself from performing same-sex marriages. *See id.* ("[T]o challenge the constitutionality of a criminal law," the plaintiff must "allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" (quoting *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))). I cannot conclude that such a credible threat would exist here.

As we have explained, "allegations of a *past* injury, which retrospective relief—typically damages—can remedy," without more, are insufficient to establish standing to pursue an injunction. *Letot*, 2024 WL 2490521, at *4; *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, [if] unaccompanied by any continuing, present adverse effects."). As things stand today, with an unreviewed public warning on the books, I do not disagree that the judge faces a credible threat of future investigation and sanctions by the Commission if she resumes her marriage policy. But any such threat would have all but disappeared had she sought review in the SCR and prevailed.

Not so, the Court concludes, because the SCR has no power to prospectively bind the Commission with respect to future investigations and sanctions, nor is an SCR, composed of newly appointed justices for each case, bound by the decisions of previous SCRs. *Ante* at 19.

9

However, even if the SCR's vacatur of the sanction against the judge would not have categorically foreclosed the Commission from "re-sanctioning" her if she resumed the sanctioned conduct, the mere possibility that the Commission *could* do so does not amount to a credible threat that it *would*. The notion that the Commission would devote its time and resources to such an endeavor after having its sanction vacated on judicial review, hoping for a different result the second time around, while not unfathomable, is certainly less than credible.

Second, the judge asserts several requests for declaratory relief. TEX. CIV. PRAC. & REM. CODE § 110.005(a)(1) (authorizing a person who successfully asserts a TRFRA claim to recover declaratory relief under the UDJA). These include requests for a declaration that the Commission violated her rights under TRFRA by sanctioning her for recusing herself from officiating same-sex weddings, that the Commission's interpretation of Canon 4A violates the Free Speech Clause,[2] and that a judge does not violate Canon 4A by engaging in the same type of religious speech and referral system. As the Court notes, those requests are subject to the same exhaustion requirement as her request for injunctive relief because all hinge on whether "the prospective threat of future sanctions would remain following vacatur of the Public Warning." *Ante* at 20. Because I conclude that a credible

---

[2] The Court holds that this claim was correctly dismissed because it is barred by sovereign immunity, not because the judge failed to exhaust. *Ante* at 25–26.

10

threat of future sanctions would *not* remain following vacatur, I would hold that the claims are barred by the failure to exhaust.[3]

Finally, the judge seeks compensatory damages for the Commission's alleged past violations of TRFRA. TEX. CIV. PRAC. & REM. CODE § 110.005(a)(3), (b) (authorizing a person who successfully asserts a TRFRA claim to recover compensatory damages up to $10,000 for each controversy). I agree with the Court that an SCR's vacatur of the public warning would not have mooted the claim seeking redress for the burden of the warning during the time it was in effect. *Ante* at 18. But it would have significantly shortened that period and, in turn, lowered the amount of lost income attributable to the warning.

Unlike most civil litigation, judicial review of a Commission decision issued after an informal proceeding, as happened here, is a streamlined process. A judge who seeks such review must file a request with the Chief Justice of this Court for appointment of an SCR within thirty days after the Commission issues its decision. TEX. GOV'T CODE § 33.034(b). Within ten days of receiving the request, the Chief Justice must select "by lot" the justices that will serve on the SCR. *Id.* § 33.034(c). Within fifteen days after the SCR is appointed, the Commission must file a charging document that includes the sanction

---

[3] The Court holds that the judge may also proceed with her claim for a declaration that her conduct did not violate Canon 3B(6) or Article V, Section 1-a(6)(A) of the Texas Constitution. *Ante* at 20. Again, I disagree. The Commission ultimately found only that the judge violated Canon 4A and issued the public warning solely on that basis. She cannot legitimately claim a credible threat that the Commission will sanction her in the future for violating canons that the Commission has already concluded she did *not* violate.

11

or censure. *Id.* § 33.034(d). Absent a continuance for good cause, which may not exceed a total of sixty days, the SCR must conduct a de novo hearing on the charging document within thirty days after the date the document is filed. *Id.* § 33.034(h). And the SCR must issue its decision within sixty days after the hearing. *Id.* At most, the process takes less than eight months from start to finish. By contrast, the current lawsuit has already been pending for approximately four-and-a-half years.

Utilizing available administrative remedies to minimize the damages that will ultimately be sought against a governmental unit is consistent with the purpose of requiring exhaustion. That is, such an approach ensures "an orderly procedure to enforce" a party's legal rights; it does not "deprive" the party of said rights. *Rhule*, 417 S.W.3d at 442. Further, exhaustion would (or at least could) have resulted in a more streamlined and efficient TRFRA lawsuit on the back end, lowering the amount of attorney's fees that will inevitably be sought against the Commission if the judge prevails. TEX. CIV. PRAC. & REM. CODE § 110.005(a)(4) (authorizing a person who successfully asserts a TRFRA claim to recover "reasonable attorney's fees, court costs, and other reasonable expenses incurred in bringing the action"). By failing to exhaust, she maximizes her damages and attorney's fees in derogation of the "orderly procedure" envisioned by the doctrine.

In sum, the judge could and should have engaged in the procedure provided by the Government Code for obtaining judicial review of the public warning, as nothing precluded her from bringing affirmative claims under TRFRA and the UDJA after exhausting that procedure. *See CPS Energy*, 671 S.W.3d at 620. Because she did not, the district

12

court lacked jurisdiction and appropriately dismissed this suit. *Chaparral Energy*, 546 S.W.3d at 138 ("When an agency has exclusive jurisdiction, courts lack jurisdiction until the party has exhausted all administrative remedies before the agency.").

I express no opinion on the merits of the judge's TRFRA claims.[4] I would hold only that she failed to exhaust her administrative remedies before filing this suit, thereby depriving the district court of jurisdiction. Because the Court holds that exhaustion was not required, I respectfully dissent.

Debra H. Lehrmann
Justice

**OPINION FILED:** June 28, 2024

---

[4] As neither the trial court nor the court of appeals has addressed the merits, the Court appropriately declines to do so in the first instance. *See In re Troy S. Poe Tr.*, 646 S.W.3d 771, 780 (Tex. 2022) ("As a court of last resort, it is not our ordinary practice to be the first forum to resolve novel questions, particularly ones of widespread import.").

13